# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ROBERT R. REAN,
    #70571-65

    Plaintiff,

vs.

CITY OF LAS VEGAS, *et al.*,

    Defendants.

2:10-cv-01094-RLH-RJJ

**ORDER**

This is a prisoner civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff's application to proceed *in forma pauperis* is granted (docket #1). The court now reviews the complaint.

**I. Screening Standard**

Pursuant to the Prisoner Litigation Reform Act (PLRA), federal courts must dismiss a prisoner's claims, "if the allegation of poverty is untrue," or if the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Nietzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id*. at 327. The critical inquiry is whether a

constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under Section 1915(e)(2) when reviewing the adequacy of a complaint or amended complaint. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to plaintiff and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Allegations in a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). All or part of a complaint filed by a prisoner may be dismissed *sua sponte*, however, if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (*e.g.* claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.* fantastic or delusional scenarios). *See Neitzke*, 490 U.S. at 327-28; *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Hydrick v. Hunter*, 466 F.3d 676, 689

1  (9th Cir. 2006).

2  **II. Instant Complaint**

3  Plaintiff, who is incarcerated at Victorville Federal Correctional Center in Adelanto,
4  California, has sued Clark County, Clark County Sheriff Douglas Gillespie, Clark County Detention
5  Center ("CCDC") Chief of Detention Dixon, Las Vegas Municipal Police Department ("LVMPD")
6  officers Bradley Arb, Albright, J. Seem, Robert Foster, T. Olson, Sgt. Rocco Lepore, Sgt. Washington,
7  Sgt. Judd, Doe "LVMPD SERT team members," Clark County Deputy District Attorney D.A. Sweetin
8  and District Judge David Barker. Plaintiff asserts violations of his Fourteenth Amendment due process
9  rights and his right to access the courts.

10  First, in each count set forth by plaintiff, he also claims that Clark County, Sheriff
11  Gillespie and Chief Dixon failed to adequately hire, train and supervise defendant LVMPD officers.
12  However, "[l]iability under [§] 1983 arises only upon a showing of personal participation by the
13  defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the
14  supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent
15  them. There is no respondeat superior liability under [§] 1983." *Taylor v. List*, 880 F.2d 1040, 1045
16  (9th Cir. 1989) (citations omitted); *see also Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007); *Ortez
17  v. Washington County, State of Or.*, 88 F.3d 804, 809 (9th Cir. 1996) (proper to dismiss where no
18  allegations of knowledge of or participation in alleged violation). Plaintiff does not allege that these
19  three defendants had knowledge of, directed or participated in any alleged civil rights violation. Clark
20  County, Sheriff Gillespie, and Chief Dixon are dismissed from this action.

21  Next, plaintiff names as defendants a district attorney as well as a state district court
22  judge. Not only does he fail to set forth any allegations against these defendants, but they are immune
23  from suit on the bases of judicial and prosecutorial immunity. With respect to judges: "[c]ourts have
24  extended absolute judicial immunity from damage actions under 42 U.S.C. § 1983 not only to judges
25  but also to officers whose functions bear a close association to the judicial process." *Demoran v. Will*,
26  781 F.2d 155, 156 (9th Cir. 1986). "Judges and those performing judge-like functions are absolutely

1  immune from damage liability for acts performed in their official capacities." *Ashelman v. Pope*, 793
2  F.2d 1072, 1075 (9th Cir. 1986) (*en banc*); *see also Miller v. Davis*, 1142, 1145 (9th Cir. 2008);
3  *Partington v. Gedan*, 961 F.2d 852, 860 n.8 (9th Cir. 1992); *Houghton v. Osborne*, 834 F.2d 745, 750
4  (9th Cir. 1987).  Prosecutorial immunity protects eligible government officials when they are acting
5  pursuant to their official role as advocate for the State performing functions "intimately associated with
6  the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also*
7  *Kalina v. Fletcher*, 522 U.S. 118, 124-26 (1997); *Botello v. Gammick*, 413 F.3d 971, 975 (9th Cir. 2005);
8  *Genzler v. Longanbach*, 410 F.3d 630, 636-37 (9th Cir. 2005); *KRL v. Moore*, 384 F.3d 1105, 1110 (9th
9  Cir. 2004); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).  State prosecutors are entitled to
10 absolute prosecutorial immunity for acts taken in their official capacity. *See Kalina v. Fletcher*, 522 U.S.
11 118, 123-25 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259, 269-70 (1993); *Imbler*, 424 U.S. at 427, 430-
12 31; *Botello*, 413 F.3d at 975; *Genzler*, 410 F.3d at 636; *KRL*, 384 F.3d at 1110; *Broam*, 320 F.3d at
13 1028.  Accordingly, defendants Sweetin and Barker are dismissed from this action.

### A.  Count I

With respect to his Fourteenth Amendment due process claims, plaintiff alleges the following:  that when he was booked into CCDC in April 2010, officer Arb conducted his intake interview and informed him that he would be housed in the general population.  Shortly thereafter, Jane Doe officer sought to photograph plaintiff's tattoos, but plaintiff "declined to remove his clothing to allow semi-nude photos [to be] taken of his body" and told officers he would only agree to the photos if they had a court order.  Plaintiff was then taken to a housing unit.  He learned after a few weeks of restrictive conditions that he had been reclassified as maximum security for refusing to let officers photograph his tattoos.  Plaintiff wrote inmate requests and grievances and officer Foster responded that until officers can photograph his tattoos in order to determine whether they are gang-related, he would remain in the maximum security unit.  Officers Albright, Shelby, Lepore, J. Seem were involved in subsequent interviews and responded to various grievances, without result.  Plaintiff claims that he was reclassified as maximum security without due process in violation of his Fourteenth Amendment rights.

A prison regulation creates a liberty interest deserving protection under the Fourteenth Amendment's due process clause only when the deprivation in question (1) restrains the inmate's freedom in a manner not expected from his or her sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *see also Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

Examining plaintiff's tattoos in order to ascertain whether he may be affiliated with a gang and thus be a member of a security threat group is eminently reasonably related to the legitimate penological interests of ensuring safety and maintaining order in the prison. Neither did the imposition of maximum security classification impose an atypical and significant hardship on plaintiff in relation to the ordinary incidents of prison life. Plaintiff gave defendants no option but to classify him as maximum security by refusing to allow defendants to examine his tattoos in order to determine whether they suggest gang affiliations. Plaintiff fails to state a Fourteenth Amendment claim for which relief may be granted.

Plaintiff also asserts a claim under the Due Process Clause of the Fifth Amendment. The procedural guarantees of the Fifth and Fourteenth Amendment's Due Process Clause apply only when a constitutionally protected liberty or property interest is at stake. *See Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977); *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government-not to those of state or local governments." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981)). Plaintiff does not allege that any of the defendants are federal actors. Accordingly, plaintiff has failed to state a claim alleging a violation of the Fifth Amendment. Count I is dismissed for failure to state a claim for which relief may be granted.

**B. Count II**

Next, according to plaintiff, the CCDC law library uses an "exact-cite/book-paging" system that apparently requires inmates to make specific requests for materials without any list of titles

or other descriptions of the resources available. Plaintiff claims that he was unable to complete legal research because it was difficult to know what requests to make and any responses took several weeks. He alleges that it hindered his pursuit of several pending criminal and civil matters. Plaintiff asserts that he grieved this issue to T. Olson, the law librarian, without result.

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *limited in part on other grounds by Lewis*, 518 U.S. at 354; *Ching v. Lewis*, 895 F.2d 608, 609 (9th Cir. 1990). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828; *see also Madrid v. Gomez*, 190 F.3d 990, 995 (9th Cir. 1999). The right, however, "guarantees no particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts . . . . [It is this capability] rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Lewis*, 518 U.S. at 356-57. Prison officials may select the best method to ensure that prisoners will have the capability to file suit. *See id.* at 356. Prisons "might replace libraries with some minimal access to legal advice and a system of court-provided forms . . . that asked the inmates to provide only the facts and not to attempt any legal analysis." *Id.* at 352.

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *See Lewis*, 518 U.S. at 349; *Madrid*, 190 F.3d at 996. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348 (citation and internal quotations omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (explaining that "[f]ailure to show that a 'non-frivolous legal claim ha[s] been frustrated' is fatal" to a claim for denial of access to legal materials) (citing *Lewis*, 518 U.S. at 353 & n.4); *Madrid*, 190 F.3d at 996. Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the

product of prison regulations reasonably related to legitimate penological interests." *Lewis*, 518 U.S. at 362. The right of access to the courts is limited to non-frivolous direct criminal appeals, *habeas corpus* proceedings, and § 1983 actions. *See Lewis*, 518 U.S. at 353 n.3 & 354-55; *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1159-60 (9th Cir. 2003) (explaining that "a prisoner has no constitutional right of access to the courts to litigate an unrelated civil claim."); *Madrid*, 190 F.3d at 995. Count II states a claim for violation of plaintiff's right of access to the courts against defendant Olson.

### C. Count III

Plaintiff claims that when he was transferred to a different unit Sgt. Washington deprived him of personal property without due process in violation of his Fifth and Fourteenth Amendment rights. In *Hudson v. Palmer*, the United States Supreme Court held that intentional deprivation of an inmate's property by prison employees does not violate the Due Process Clause, provided that adequate state post-deprivation remedies are available. 468 U.S. 517, 533-534, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Nevada law provides for civil actions for the wrongful deprivation of property by state and local officials. *See* NRS 41.031; NRS 41.0322. Plaintiff may seek redress in the state system, but he cannot sue in federal court on the claim that defendants deprived him of property without due process of the law. Therefore, count III is dismissed with prejudice.

### D. Count IV

Plaintiff claims that when defendants ultimately did photograph his tattoos, they used excessive force and also violated his "right to a reasonable expectation of privacy." In count IV he alleges the following: on August 11, 2010, Sgt. Lepore came to plaintiff's maximum security cell to photograph his tattoos. When plaintiff refused, Lepore returned the next day with what he claimed was a search warrant and threatened plaintiff that if he did not comply, force would be used. Plaintiff drafted a written admission of his prior gang affiliation, which he unsuccessfully attempted to have delivered to Lepore. Lepore showed plaintiff the search warrant, which was unsigned. Lepore and Sgt. Judd, head of the LVMPD SERT team informed plaintiff that if he did not allow photographs of his tattoos to be

taken, that a cell-extraction would occur and the photographs would be forcefully taken. Then 15-20 masked, armed SERT team members entered plaintiff's cell, placed him in handcuffs and leg irons, strapped him into a chair and wheeled him to the booking and photographing area of the jail. At least a dozen unknown corrections officers of both sexes gathered to watch. Plaintiff's pants were stripped off, despite the fact that he has no tattoos below the waist, his boxer shorts were torn, exposing his penis and testicles, and the rest of his clothing was cut from him in a menacing manner by a SERT team member with a knife. Plaintiff screamed and the officers began to twist, turn and bend plaintiff into painful positions in order to photograph his tattoos. Plaintiff was choked, his head was squeezed at the temples and pulled upwards, leaving abrasions.

With respect to plaintiff's alleged "reasonable expectation of privacy," the reasonableness of searches and seizures by prison or jail officials should be analyzed under the four factors of the "reasonableness" test set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *See Thompson v. Souza*, 111 F.3d 694, 699 (9th Cir. 1997); *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir. 1990); *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988). First, there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it, and the governmental objective must itself be a legitimate and neutral one. A second consideration is whether alternative means of exercising the right on which the regulation impinges remain open to prison inmates. A third consideration is the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources. Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. *Allen v. Toombs*, 827 F.2d 563, 567 (9th Cir. 1987) (citing *Turner v. Safley*, 482 U.S. at 89-91). While examining plaintiff's tattoos in order to ascertain whether he may be affiliated with a gang and thus be a member of a security threat group may be eminently reasonably related to the legitimate penological interests of ensuring safety and maintaining order in the prison, prisoners and detainees retain a very limited Fourth Amendment right to shield themselves from being observed nude. *See Michenfelder*, 860 F.2d at 333-334. Due to the manner in which defendants in count IV carried out the photographing of plaintiff's tattoos, he states a claim for

a violation of the Fourth Amendment right to be free from unreasonable search and seizure.

With respect to the claim of excessive force, the Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003); *Marquez v. Gutierrez*, 322 F.3d 689, 691-92 (9th Cir. 2003); *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002); *Jeffers v. Gomez*, 267 F.3d 895, 900 (9th Cir. 2001) (*per curiam*); *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000); *Robins v. Meecham*, 60 F.3d 1436, 1441 (9th Cir. 1995); *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986). When determining whether the force is excessive, the court should look to the "extent of injury . . ., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321); *see also Martinez*, 323 F.3d at 1184. Although the Supreme Court has never required a showing that an emergency situation existed, "the absence of an emergency may be probative of whether the force was indeed inflicted maliciously or sadistically." *Jordan*, 986 F.2d at 1528 n.7; *see also Jeffers*, 267 F.3d at 913 (deliberate indifference standard applies where there is no "ongoing prison security measure"); *Johnson v. Lewis*, 217 F.3d 726, 734 (9th Cir. 2000). Moreover, there is no need for a showing of serious injury as a result of the force, but the lack of such injury is relevant to the inquiry. *See Hudson*, 503 U.S. at 7-9; *Martinez*, 323 F.3d at 1184; *Schwenk*, 204 F.3d at 1196. In count IV, plaintiff states Eighth Amendment claims for excessive force against defendants Lepore, Judd and Doe SERT team members.

### III. Conclusion

**IT IS THEREFORE ORDERED** that the following claims set forth in plaintiff's amended complaint (docket #12) are **DISMISSED**: count I, count III.

**IT IS FURTHER ORDERED** that the following defendants are **DISMISSED** from this action: Clark County, Sheriff Gillespie, Chief Dixon, Clark County Deputy District Attorney Sweetin, and David Barker.

**IT IS FURTHER ORDERED** that the following claims set forth in plaintiff's amended complaint (docket #12) **MAY PROCEED**: count II, count IV.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue summons for defendants Clark County Detention Center, Las Vegas Municipal Police Department ("LVMPD") officers Bradley Arb, Albright, J. Seem, Robert Foster, T. Olson, Sgt. Rocco Lepore, Sgt. Washington, and Sgt. Judd, and deliver same, along with the amended complaint, to the U.S. Marshal for service. Plaintiff shall have twenty (20) days in which to furnish to the U.S. Marshal the required Forms USM-285. Within twenty (20) days after receiving from the U.S. Marshal a copy of the Form USM-285 showing whether service has been accomplished, plaintiff must file a notice with the court identifying which defendants were served and which were not served, if any. If plaintiff wishes to have service again attempted on an unserved defendant(s), then a motion must be filed with the court identifying the unserved defendant(s) and specifying a more detailed name and/or address for said defendant(s), or whether some other manner of service should be attempted.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file excess pages in complaint (docket #2) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that henceforth, plaintiff shall serve upon defendants, or, if an appearance has been made by counsel, upon their attorney(s), a copy of every pleading, motion, or other document submitted for consideration by the court. Plaintiff shall include with the original paper submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to the defendants or counsel for defendants. If counsel has entered a notice of appearance, the plaintiff

shall direct service to the individual attorney named in the notice of appearance, at the address stated therein. The court may disregard any paper received by a district judge or a magistrate judge that has not been filed with the Clerk, and any paper which fails to include a certificate showing proper service.

DATED this ___29th___ day of _____November_____, 2010.

_____
ROGER L. HUNT
Chief United States District Judge

11