# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROBERT R. REAN, | Case No.: 2:10-cv-01094-RLH-RJJ |
| Plaintiff, | **O R D E R** |
| vs. | (Motion to File Excess Pages–#79; Motion to Amend–#80; |
| CITY OF LAS VEGAS, *et al.*, | Motion For Summary Judgment–#94; Motion for Summary Judgment–#96) |
| Defendants. | |

       Before the Court is Plaintiff Robert R. Rean's **Motion For Leave to File Excess Pages** (#79, filed Sep. 12, 2011), **Motion to Amend** (#80, filed Sep. 12, 2011), and **Motion for Summary Judgment** (#94, filed Jan. 19, 2012), as well as Defendants Rocco LePore and Shawn Judd's **Motion for Summary Judgment** (#96, filed Feb. 15, 2012). The Court has also considered the oppositions and replies filed for these motions.

## BACKGROUND

       In April 2010, Plaintiff was booked into the Clark County Detention Center ("CCDC") in Las Vegas. "Jane Doe," a correctional officer at the CCDC, sought to photograph Plaintiff's tattoos, but he refused. Plaintiff was then taken to a housing unit which, unbeknownst to him, was a maximum security cell. Plaintiff later realized this and began to file internal

grievances concerning his classification to maximum security.  Various prison officials responded to Plaintiff informing him that his refusal to submit to photographing was the cause for his segregation in a maximum security cell.  On June 12, 2010, Plaintiff filed another grievance, in which he stated that he would permit his tattoos to be photographed if prison officials obtained a court order.

Prison officials subsequently obtained a court order from the Honorable David Barker of the Eighth Judicial District Court for the State of Nevada, and presented it to Plaintiff.  However, Plaintiff refused to comply.  The Honorable Timothy Williams, another judge of the Eighth Judicial District Court, then issued a search warrant allowing prison officials to photograph Plaintiff's tattoos.  The warrant was presented to Plaintiff, but once again he refused to comply.  Because of his continued refusal to comply, the Las Vegas Metropolitan Police Department's ("Metro") Special Emergency Response Team ("SERT") was dispatched to Plaintiff's cell where they placed Plaintiff into a restraint chair and transported him from his cell to the central booking area to have his tattoos photographed.  The photographing took about eight minutes, during which time Plaintiff continued to resist and was verbally abusive to the officers.  A surveillance video recorded the entire process.

Plaintiff filed suit in July 2010 and in November he filed an amended complaint asserting various claims under §1983.  Because Plaintiff's amended complaint (as well as his proposed second amended complaint) is almost unintelligible, and does not clearly set forth his causes of action, the Court construes Plaintiffs claims to be the following: (1) 14th Amendment Due Process (for placing Plaintiff in maximum security without notice and an opportunity to be heard); (2) 14th Amendment Due Process, Inadequate Access to the Court; (3) 14th Amendment Due Process (for confiscating Plaintiff's personal property); (4) 8th Amendment, Excessive Force, and 4th Amendment Right to Privacy.  The Court previously dismissed counts one and three. (Dkt. #13).  Plaintiff once again seeks to amend his complaint and he also moves for summary judgment.  Defendants LePore and Judd have also moved for summary judgment.  For the reasons

AO 72
(Rev. 8/82)

discussed below, the Court denies Plaintiff's motions and grants Defendants LePore and Judd's motion.

## DISCUSSION

### I.  Motion to File Excess Pages

Plaintiff seeks permission to file an "oversized" complaint. However, there is no page limit on a complaint. Therefore, Plaintiff's Motion to File Excess Pages is denied as moot.

### II.  Motion to Amend

#### A.  Legal Standard

A party may amend a pleading once "as a matter of course" within 21 days after serving it. Fed. R. Civ. P. 15(a)(1)(A). If, however, "the pleading is one to which a responsive pleading is required," then within 21 days after service of the responsive pleading, or 21 days after service of a motion brought under Rule 12(b), (e), or (f), whichever occurs earlier. Fed. R. Civ. P. 15(a)(1)(B).

After the time for amendment as a matter of course has expired, a party may amend its complaint only by leave of the court or by the adverse party's written consent. Fed. R. Civ. P. 15(a)(2). The court has discretion to grant leave and should freely do so "when justice so requires." *Id.*; *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Nonetheless, courts may deny leave to amend if: (1) it will cause undue delay; (2) it will cause undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

A proposed amendment is futile if no set of facts can be proved under the amendment that would constitute a valid clam or defense. *Farina v. Compuware Corp.*, 256 F.Supp.2d 1033, 1061 (9th Cir. 2003) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). A proposed amendment to a complaint that merely restates and seeks to reinstate claims that already have been dismissed may be properly denied as futile. *Ross v. City of*

AO 72
(Rev. 8/82)

1  *Waukegan*, 5 F.3d 1084 (7th Cir. 1993).  In addition, leave to amend may be denied if a court
2  determines that "allegation of other facts consistent with the challenged pleading could not
3  possibly cure the deficiency." *Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742 (9th Cir.
4  2008) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401(9th Cir.
5  1986)).

      **B.**    **Analysis**

Rean asserts four new claims in his proposed Second Amended Complaint.  The Court will discuss each claim in turn.

      **1.**    **14th Amendment Due Process (for placing Plaintiff in maximum security without notice and an opportunity to be heard)**

When a prison makes a regulation affording a prisoner certain rights, it creates a liberty interest.  *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  A 14th Amendment Due Process claim arises when that liberty interest is violated, which only occurs when the deprivation of that interest (1) restrains the inmate's freedom in a manner not expected from his or her sentence, or (2) imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  *Id.*  Plaintiff alleges that Metro's Standard Operating Procedure is unconstitutional because it did not provide Plaintiff with notice or an opportunity to be heard before he was placed into a maximum security cell.

Plaintiff's claim is futile for at least two reasons.  First, Plaintiff has failed to present any evidence of a regulation affording CCDC detainees the right to notice before being placed into maximum security.  Therefore, Metro did not create a liberty interest to be violated in the first place.  Plaintiff thus has no basis for demanding protection of such an interest.  Second, even if there was such an interest, there is still no due process violation because lack of notification, although unpleasant to Plaintiff, did not amount to an atypical and significant hardship.  Being placed into maximum security is a fairly common experience in prisons (especially for those who disobey orders) as prisons necessarily need to control their prisoner

4

populations in order to maintain security and stability. Therefore, allowing Plaintiff to amend his complaint to include this claim would be futile.

### 2. Violation of CCDC Prison Regulation

In Count 2, Plaintiff cites a CCDC regulation which states that a prisoner's tattoo will only be photographed with the prisoner's voluntary compliance, and will not be forced. (Standard Operating Procedure 17.01.00). Plaintiff argues that this regulation prohibits CCDC prison officials from taking any adverse action against him for choosing not to submit to photographing. Therefore, Plaintiff claims that Defendants Bradley Arb and Jane Doe violated this regulation by placing him into maximum security for refusing to be photographed at the time he was booked.

Plaintiff misinterprets this regulation. The mere fact that Plaintiff has a choice to submit to photographing only guarantees that he will not be forcibly photographed, not that he would not be placed in maximum security. Thus, because he was not forcibly photographed at the time he was booked, this regulation does not apply to the allegations in Count 2 of Plaintiff's proposed amended complaint. In addition, even if the regulation did apply, the Court finds that examining Plaintiff's tattoos in order to ascertain whether he may be affiliated with a gang organization, and thus a threat to prison security, is reasonably related to the legitimate penological interests of ensuring safety and maintaining order in the prison. Further, photographing Plaintiff's tattoos also serves a legitimate penological interest because it provides reference to prison officials to identify future prisoners of similar gang affiliations. Therefore, refusal to submit to photographing is sufficient for Plaintiff's placement at maximum security. Therefore, Count 2 is also futile.

### 3. Conspiracy

Plaintiff asserts various allegations in count 3 of his proposed amended complaint. He claims that two CCDC officers, Defendants Robert Foster and Steven Albright, knew or should have known that Plaintiff was unduly placed into maximum security cell but failed to respond

properly to his grievance. He also claims that Defendant Seely, also a CCDC officer, acted indifferently to Plaintiff's grievance by improperly scheduling him an interview with prison officials regarding his classification into maximum security. Moreover, Plaintiff claims that Defendant officer Rocco LePore knowingly and willingly participated in the perpetuation of Plaintiff's confinement by insisting to photograph his tattoos. Plaintiff alleges that those Defendants conspired to unlawfully confine Plaintiff and deprive him of his due process rights.

Plaintiff's claim is futile because he fails to allege sufficient facts that make it probable that these Defendants had anything to do with his confinement. Plaintiff's segregation in the maximum security cell is not a result of any prison officers' conduct, but is due to Plaintiff's continued refusal to allow prison officials to photograph his tattoos. Failure to submit his tattoos to photographing gave prison officers no choice but to classify him as maximum security. Therefore, the Court denies Plaintiff's motion as to this claim.

### 4. 14th Amendment Due Process, Inadequate Access to the Court

This court has previously held that Plaintiff stated a valid inadequate access to the courts claim. (Dkt. #13). However, the Court dismissed Defendant Jim Dixon from this claim. (Dkt. #13). Plaintiff now attempts to bring Dixon back into the claim under §1983 supervisory liability. Supervisory liability is imposed against a supervisory official for: (1) his own culpable action or inaction in the training, supervision, or control of his subordinates, (2) by his "acquiescence in the constitutional deprivation of which the complaint is made," or (3) for conduct that showed a "reckless or callous indifference to the rights of others." *Larez v. City of Log Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). A supervisor's action or inaction must be "affirmatively linked" to the deprivation of the plaintiff's federal rights in order to assert supervisory liability. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). Plaintiff fails to allege facts in his proposed second amended complaint that are different from the facts previously alleged. Therefore, Plaintiff has failed to cure the deficiencies in this claim.

///

1    In conclusion, the Court denies Plaintiff's motion to amend his complaint as either
2 futile or for failure to cure deficiencies in his claims.  Accordingly, the Court will analyze the
3 parties' motions for summary judgment using the amended complaint (Dkt. #12).
4 **III.    Motion For Summary Judgment**
5        **A.    Legal Standard**
6    Summary judgment is proper when "the pleadings, depositions, answers to
7 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
8 genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter
9 of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is a sufficient evidentiary basis
10 on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material"
11 only if it could affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby,*
12 *Inc.*, 477 U.S. 242, 248-49 (1986); *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587
13 (1986).  The party moving for summary judgment has the burden of showing the absence of a
14 genuine issue of material fact, and the court must view all facts and draw all inferences in the light
15 most favorable to the non-moving party. Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th
16 Cir. 1982), *cert. denied*, 460 U.S. 1085 (1983).
17    Once the moving party satisfies the requirements of Rule 56, the burden shifts to the
18 party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial."
19 *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The non-moving
20 party "may not rely on denials in the pleadings but must produce specific evidence, through
21 affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosp.,*
22 *Inc.*, 929 F.2d 1404 (9th Cir. 1991), and "must do more than simply show that there is some
23 metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
24 475 U.S. 574, 586 (1986).
25 ///
26 ///

AO 72
(Rev. 8/82)

**B.     Analysis**

As stated above, Plaintiff only has two remaining claims.  In Count 4 of his amended complaint, Plaintiff asserts an 8th Amendment excessive force claim, as well as a privacy claim, for forcibly taking off some of his clothing and photographing his tattoos.  He names Defendants Lepore and Judd in this claim in their capacity as supervisors at the CCDC.  In Count 2, Plaintiff asserts a claim of inadequate access to the courts against Defendant T. Olson, the law librarian at CCDC.

**1.     Eighth Amendment, Use of Excessive Force**

When prison officials use excessive force against a prisoner, they violate the prisoner's Eighth Amendment right to be free from cruel and unusual punishment.  *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002).  However, force does not amount to a constitutional violation if it is applied in a good faith effort to restore discipline and order and not "maliciously and sadistically for the very purpose of causing harm."  *Whitely v. Albers*, 475 U.S. 312, 320-21 (1986).  Accordingly, under the Eighth Amendment, a court must find malicious and sadistic force, not merely objectively unreasonable force.  *Clement*, 298 F.3d 898, 930.

The first inquiry here is whether Metro's SERT team used excessive force during the cell extraction and photographing of Plaintiff's tattoos.  After review of the video surveillance, the Court holds that there was no such force used.  The force used during photographing was not malicious or sadistic because the sole purpose was to obtain pictures of Plaintiff's tattoos, not to cause harm to Plaintiff.  Plaintiff was given multiple opportunities to voluntarily comply with the photographing and his continued refusal was the sole cause for SERT's actions.  Furthermore, the force used was minimal.  SERT did not, for example, strike Plaintiff or push him up against a wall.  In fact, the surveillance video shows that the SERT members only bent and maneuvered Plaintiff's upper body to the minimal degree necessary to expose his tattoos to the camera. (Dkt. # 95, Ex. N MOV 004).  Had Plaintiff not resisted, the physical friction may have been even less.  Therefore, the Court grants Defendants' motion for summary judgment on this claim.

8

1    **2.     Fourth Amendment, Right of Bodily Privacy**

2    The Fourth Amendment protects "[t]he right of the people to be secure in their
3    persons . . . against unreasonable searches and seizures . . . ." U.S. Const. Amend. IV.  The Ninth
4    Circuit has held that the Fourth Amendment right of the people to be secure against unreasonable
5    searches and seizures "extends to incarcerated prisoners; however, the unreasonableness of a
6    particular search is determined by reference to the prison context." *Michenfelder v. Sumner*, 860
7    F.2d 328, 332 (9th Cir. 1988).  Shielding one's unclothed figure from the view of strangers,
8    particularly strangers of the opposite sex, is impelled by elementary self-respect and personal
9    dignity. *Id*. at 333; *see also Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985).  In
10   determining the scope of such a privacy right, the Ninth Circuit Court of Appeals in *Michenfelder*
11   *v. Sumber* asked the question of whether female officers "regularly or frequently observe unclothed
12   inmates without a legitimate reason for doing so." *Michenfelder* at 334.  In addition, the court
13   takes into account how clearly female officers could observe nude male inmates. *Id*.  Here,
14   Plaintiff specifically alleges that during his photographing, his boxer shorts were torn exposing his
15   "penis and testicles" to a "dozen unknown corrections officers of both sexes."  (Dkt. #12).

16   Plaintiff's claim fails.  The video surveillance shows that Plaintiff was wearing his
17   boxer shorts during the entire photographing process.  (Dkt. # 95, Ex. N  MOV 004).  The
18   Plaintiff's genitals are never shown on the video. *Id.*  Even if we assume that his genitals were
19   exposed accidentally, Plaintiff's claim still fails because Plaintiff's body was not routinely or
20   regularly exposed to female prison officers or other bystanders.  Therefore, any exposure during
21   photographing was momentary and an "isolated incident." *Id*.  Moreover, even if Plaintiff was
22   exposed,  he was surrounded by a group of male SERT team members during the process and the
23   restraint seat that he sat on was facing a wall.  Therefore, any female officer or person present in
24   the booking area would have had, at most, "an indistinct, limited view." *Id*.  Such level of
25   exposure would not violate the Plaintiff's rights to bodily privacy in a prison setting.  Therefore,
26   the Court grants Defendants' motion for summary judgment as to this claim as well.

AO 72
(Rev. 8/82)

### 3.     Inadequate Access to Law Library

Plaintiff claims that the CCDC law librarian used an "exact-cite/book-paging" system, which requires inmates to make specific requests for materials without any list of titles or other descriptions of the resources available. Plaintiff claims that he was unable to complete legal research because it was difficult to know what requests to make and any responses to his requests took several weeks. He asserts that he grieved this issue to T. Olson, the law librarian without result.

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *See also Madrid v. Gomez*, 190 F.3d 990, 995 (9th Cir. 1999). An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 581 U.S. at 318. Even so, delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Id*. at 362.

Here, Plaintiff fails to demonstrate that he suffered an actual injury. Although the "exact-cite/book-paging" system made Plaintiff's research progress slow, it did not pose an unreasonable burden on his research. Plaintiff filed all motions on time and he points to no adverse action by the Court because of his slow research. Also, the Court, taking into account Plaintiff's *pro se* status, also granted him several motions for extension of time. Therefore, Plaintiff was not denied adequate access to the court.

///
///
///
///
///

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Motion to File Excess Pages (#79) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Amend (#80) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (#94) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (#96) is GRANTED.  The Court instructs the Clerk of Court to close the case.

Dated: June 19, 2011

_____
**ROGER L. HUNT**
**United States District Judge**